## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

KATIE GATEWOOD,

Plaintiff,

v.

CITY OF O'FALLON, MISSOURI, a municipality and political subdivision of the State of Missouri; O'FALLON BOARD OF IMPEACHMENT; BILL HENNESSY, in his official capacity as Mayor of O'Fallon, Missouri; DALE KLING, in his individual capacity; DAVE HINMAN, in his individual capacity; and JEFF KEUHN, in his individual capacity,

Defendants.

Case No. 4:22-cv-00089

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – CIVIL RIGHTS [42 U.S.C. § 1983]

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### INTRODUCTION

1. In early 2021, several members of the City of O'Fallon, Missouri's City Council grew frustrated with Katie Gatewood, a fellow councilmember who had persistently and publicly questioned the background and decision-making of the City's Chief of Police; they decided to try to remove her from office.

2. They seized upon an innocuous statement Gatewood had made about the source of some of the concerns she had about the Chief of Police, as well as the

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____

Page 1 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

fact that she had made information-gathering calls to several people in Texas, where the Chief had previously worked, using Gatewood's communications to bring an impeachment action against her.

3. The Articles of Impeachment contend that Gatewood's statement about the source of her information was false and that her efforts to learn more about the Chief of Police violated a City ordinance prohibiting councilmembers from "directly interfering" with certain City employees and departments.

4. It is solely on this basis—a single, innocuous statement Gatewood made at a City Council meeting that *might* have been false, and the Chief of Police's discomfort with questions she was asking about his background and decision-making—that the City is attempting to remove Gatewood from office and thus deprive her constituents of the representative they elected to serve them on the City Council.

5. This civil rights lawsuit seeks to preserve and to vindicate the Plaintiff's constitutional rights protected by the First and Fourteenth Amendments to the U.S. Constitution, including the freedom of expression and the right to due process of law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction because this action arises under the First and Fourteenth Amendments to the United States Constitution. 28 U.S.C. § 1331 (federal question).

7. This Court has jurisdiction over this matter pursuant to Section 1 of the Civil

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-____                    Page 2 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

Rights Act of 1871. *See* 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1343(a).

8.   This Court is empowered to grant the relief the Plaintiffs request pursuant to the federal Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201 and 2202.

9.   The United States District Court for the Eastern District of Missouri is the proper venue for this case pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the Plaintiff's claims occurred in O'Fallon, Missouri.

10.  Venue is proper in the Eastern Division pursuant to Local Rule 3-2.07.

## PARTIES

11.  Defendant City of O'Fallon ("the City"), is a municipality and political subdivision of the State of Missouri.

12.  Defendant O'Fallon Board of Impeachment ("the Board") is a quasi-judicial tribunal convened for the purpose of conducting an impeachment hearing pursuant to the terms of Missouri's Administrative Procedure Act at which the Board would consider certain allegations leveled against Plaintiff Gatewood and, if those allegations were determined to be true, to decide whether Gatewood should be removed from the office to which her constituents elected her.

13.  Defendant Bill Hennessy is a citizen of the United States, a citizen of Missouri who lives in the City, Mayor of the City, and Presiding Officer of the Board; he is sued in his official capacity as Mayor of the City.

14.  Defendant Dale Kling is a citizen of the United States, a citizen of Missouri who lives in the City, a member of the O'Fallon City Council, and a member of

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 3 of 30          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

the Board. Kling is sued in his individual capacity.

15. Defendant Dave Hinman is a citizen of the United States, a citizen of Missouri who lives in the City, a member of the O'Fallon City Council, and a member of the Board. Hinman is sued in his individual capacity.

16. Defendant Jeff Keuhn is a citizen of the United States, a citizen of Missouri who lives in the City, a member of the O'Fallon City Council, and a member of the Board. Keuhn is sued in his individual capacity.

17. Plaintiff Katie Gatewood is a citizen of the United States, a citizen of Missouri who lives in and pays taxes to the City, and a member of the O'Fallon City Council serving a three-year term that will expire in April 2023.

## FACTS

18. At the 2020 municipal election voters from the City's Fifth Ward elected Gatewood to a three-year term on the O'Fallon City Council; the term is set to expire in April 2023.

19. Part of Gatewood's career before her election included service as a law enforcement officer; she served a total of six years (1993-98 and 2001-03) as a corrections officer and four years (2009-13) as a patrol officer for the City of Chesterfield's police department; this background is the reason why law enforcement is an area of special interest for her.

20. After Gatewood began her term on the City Council, the City began considering whether to name Philip Dupuis as interim Chief of the City's police department.

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 4 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

21. Dupuis had previously served as Chief of Police for the City of Conroe, Texas.

22. Around the time the City Council began considering Dupuis, Gatewood was made aware that the Texas Department of Public Safety had conducted an investigation that involved Dupuis's actions in 2017 when he was serving as Chief in Conroe. A true and accurate copy of the report regarding this incident is attached as Plaintiff's Exhibit 1.

23. Gatewood was also later made aware that the Bryan (TX) Police Department had conducted a criminal investigation in which someone accused a person—believed (but not confirmed) to be Philip Dupuis—of committing a felony on January 28, 2019, a timeframe in which Dupuis was acting as a private investigator. A true and accurate copy of the report regarding this incident is attached as Plaintiff's Exhibit 2.

24. Gatewood felt that there needed to be further investigation into Dupuis's background before the City named Dupuis as its Chief of Police.

25. Nevertheless, Dupuis became the City's interim Chief of Police on October 2, 2020.

26. After Dupuis assumed this role, Gatewood questioned several of the decisions Dupuis made and she received information that raised fresh concerns about whether Dupuis was the right choice to lead the City's police department.

27. Despite Gatewood's concerns, the Mayor moved to appoint Dupuis as the City's permanent Chief of Police on January 7, 2021; the City Council voted 7-3 to approve the appointment.

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 5 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

28. At the City Council meeting held on January 14, 2021, Gatewood made a public statement to explain why she opposed the choice of Dupuis as Chief.

29. As part of that statement she said, "[T]here were several concerns brought to me by fellow police officers that I believe should have taken time to vet before voting to take these concerns and to prove them false and inaccurate." Gatewood will refer to this sentence as "the January 14th Statement."

30. Gatewood later clarified that the concerns to which she was referring were first brought to her by a civilian, but that she then confirmed that information through conversations with more than one police officer.

31. Even though the City Council had approved Dupuis as the permanent Chief of Police, Gatewood believed she owed it to her constituents to continue looking into the concerns that had been raised about his suitability to serve in that position.

32. Gatewood reached out to several people in Texas that she believed might have personal knowledge about Dupuis's conduct there, attempting to gather additional information.

33. Gatewood also continued to publicly ask questions about how Dupuis was using the authority the City had given him.

34. After Gatewood made the January 14th Statement, Dupuis (and others) asked her to divulge the identity of the person(s) who shared those concerns with her; Gatewood declined to do so.

35. On February 5, 2021, Lieutenant Curtis Sullivan, an investigator from the St.

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 6 of 30          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

Charles County Police Department, conducted an interview with Gatewood in which his first question asked her to reveal the identity of the police officers from whom she received the information about Dupuis.

36. Sullivan claimed that Gatewood told him that she received the information from a citizen, not police officers.

37. In Sullivan's opinion, this meant that the January 14th Statement was false, and that Gatewood knew the statement was false at the time she made it.

38. In early March 2021, Defendant Kling filed Bill No. 7298, which would authorize the City to hire Lauber Municipal Law, LLC for the purpose of investigating Gatewood's conduct.

39. At a City Council meeting held on March 25, 2021, Gatewood played a recording of a conversation between herself and Kling in which Kling stated that the bill filed against Gatewood would be set aside if she identified the persons who had shared their concerns about Chief Dupuis with her.

40. Gatewood claimed that the recording was evidence that Kling had committed a felony and she asked for St. Charles County Prosecuting Attorney Tim Lohmar to investigate the matter.

41. On April 8, 2021, the City Council passed Bill No. 7298. A true and accurate copy of this bill is attached as Plaintiff's Exhibit 3.

42. On May 20, 2021, Lauber Municipal Law, LLC, delivered to the City Council a memorandum authored by Attorney Joseph G. Lauber ("the Lauber Report") that summarized the results of its investigation. A true and accurate copy of

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 7 of 30          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

the Lauber Report is attached as Plaintiff's Exhibit 4.

43. The Lauber Report indicated two Questions Presented:

A. Did Councilmember Katie Gatewood lie to the City Council when making statements objecting to the appointment of Philip Dupuis as Chief of Police; does a councilmember owe a duty of candor to the Council, and if so, what are the consequences of breaching that duty?

B. Did Councilmember Gatewood's actions to investigate Philip Dupuis' [sic] background after the City Council voted to approve his appointment as permanent chief of police amount to interference by a councilmember?

44. In response to Question A, the Lauber Report's Brief Answer stated:

Even if the Council were to determine that Councilmember Gatewood lied to the City Council when she stated that fellow police officers brought concerns to her regarding the appointment of Philip Dupuis as chief of police to her, there is no specific statutory, charter, or city code-imposed duty of candor owed by Councilmember Gatewood to the City Council. Consequently, there is no breach of duty, nor legal consequences for a breach of duty.

45. In response to Question B, the Lauber Report concluded that because neither the City Council nor the City Administrator had authorized Gatewood to conduct telephone interviews with employees and elected officials from Conroe, Texas; the Texas Rangers; and the Montgomery County (Texas) District Attorney's Office, Gatewood had violated § 115.090 of the City's City Code, which prohibits interference by a councilmember into matters that come under the direction of the City Administrator.

46. Dupuis voluntarily terminated his employment with the City on June 18, 2021, when he submitted his letter of resignation. A true and accurate copy of Dupuis's Resignation Letter is attached as Plaintiff's Exhibit 5.

47. Section 3.6(C) of the O'Fallon City Charter authorizes the Mayor of the City, with the consent of a majority of the entire City Council, to remove any City

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-____                          Page 8 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

Council member from office for cause shown.

48. At a City Council meeting held on June 24, 2021, the Councilmembers discussed the Lauber Report and whether to convene a Board of Impeachment to consider whether Gatewood should be disciplined for the actions detailed in the Lauber Report.

49. In the course of this conversation Defendants Kling, Hinman, and Keuhn made clear, unambiguous, and public statements indicating their belief that Gatewood had lied and that she had committed the violations of City law specified in the Lauber Report.

50. On July 22, 2021, Defendant Hinman proposed Resolution No. 07-22-2021I, which called for the City Council to convene as the Board of Impeachment "to hear evidence, provide notice to Councilmember Gatewood of these proceedings, the applicable rules to be observed, and an opportunity to be heard on the charges identified in the Article [sic] of Impeachment, and authorize the issuance of subpoenas necessary for such purposes." A true and accurate copy of this resolution is attached as Plaintiff's Exhibit 6.

51. The Articles of Impeachment attached to the Resolution, which were offered on behalf of the City by attorneys from Lauber Municipal Law, LLC, acting as Special Prosecutors, included two charges: (1) That Gatewood had violated O'Fallon City Code § 115.090 by contacting persons in Texas to gather information about Dupuis's actions there; and (2) that Gatewood had violated her oath of office by "speaking untruths, lying, or making material

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 9 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

misrepresentations[.]" A true and accurate copy of the Articles of Impeachment is attached as Plaintiff's Exhibit 7.

52. The City Council voted 6-3 (one member abstained) to approve Resolution No. 07-22-2021I and the Articles of Impeachment.

53. On August 6, 2021, Gatewood filed her Reply to the Articles of Impeachment. A true and accurate copy of that Reply is attached as Plaintiff's Exhibit 8.

54. Gatewood denied Lieutenant Sullivan's account of their interview—the continues to maintain that the January 14th Statement was truthful—but she admitted speaking to persons in Texas for the purpose of gathering information about Dupuis.

55. Her Reply further stated that even if the factual allegations in the Articles of Impeachment were true, the January 14th Statement and her efforts to gather information about Dupuis fell within the First Amendment's protections for the freedom of expression and did not permit the City or the Board to remove her from office.

56. In light of Gatewood's response to the Articles of Impeachment, the four issues the Board had to resolve were: (1) whether the January 14th Statement was true or false; (2) whether, if the January 14th Statement was false, the making of that Statement constituted a punishable offense; (3) whether the questions Gatewood asked about Dupuis violated O'Fallon City Code § 115.090; and (4) if the Board considered the allegations of either of the charges in the Articles of Impeachment to have been proven, whether Gatewood should be removed from

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*          Page 10 of 30
Case No. 4:__-cv-_____

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

office.

57. The Board first convened for a hearing on September 30, 2021. A true and accurate transcript of this hearing is attached as Plaintiff's Exhibit 9.

58. Gatewood recused herself from the proceeding due to her personal interest and clear bias in regard to the issues the Board was called upon to decide.

59. Gatewood then presented motions to disqualify Defendants Kling, Hinman, and Keuhn from participating in the proceedings due to the statements each of them had previously made regarding the issues the Board was called upon to decide; Gatewood noted that if the biased members were not removed from the Board, the entire proceeding would be unconstitutional and invalid.

60. The City argued that Kling, Hinman, and Keuhn could nullify the effect of their prior statements, so long as they stated under oath that they could be impartial.

61. The Mayor continued the hearing to a later date and instructed the parties to submit written arguments as to the question of whether Kling, Hinman, and Keuhn should be disqualified from the Board.

62. The City submitted suggestions opposing the Motions to Disqualify on October 14, 2021, and Gatewood submitted her reply memorandum on October 19, 2021.

63. The Board reconvened on November 16, 2021, to continue the impeachment hearing.

64. Before the main hearing began, The Mayor heard evidence regarding

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____

Page 11 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

Gatewood's motions to disqualify Kling, Hinman, and Keuhn. A true and accurate copy of the transcript of the hearing regarding Gatewood's motions to disqualify is attached as Plaintiff's Exhibit 10.

65. After hearing evidence and testimony from each of them, the Mayor entered an order denying Gatewood's motions to disqualify; Kling, Hinman, and Keuhn remained part of the Board and proceeded to participate in the hearing that followed. A true and accurate copy of the transcript of the main impeachment hearing held on November 16, 2021, is attached as Plaintiff's Exhibit 11.

66. At the conclusion of the hearing The Mayor instructed the parties to submit proposed findings of fact and conclusions of law.

67. The City submitted its proposed Findings of Fact and Conclusions of Law on December 17, 2021. A true and accurate copy of this document is attached as Plaintiff's Exhibit 12.

68. The City's proposed Findings of Fact and Conclusions of Law "directs and authorizes the Mayor to remove [Gatewood] from office, effective immediately."

69. The only specific factual basis the City asserts as its justification for removing Gatewood from office is the City's contention that the January 14th Statement was false and that Gatewood made three phone calls to people in Conroe, Texas, for the purpose of gathering information about Dupuis's actions while he was Chief of Police in that city.

70. The Board is scheduled to reconvene at 7:30 p.m. on January 27, 2021, for "deliberation, debate and adoption of Findings of Fact and Conclusions of Law."

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 12 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

71. Upon information and belief, the City intends to vote to convict Gatewood of the charges leveled against her in the Articles of Impeachment and to have the Mayor immediately remove her from office on the evening of January 27, 2021.

72. Upon information and belief, there are no circumstances under which, if the Board votes to convict Gatewood of either of the charges against her in the Articles of Impeachment, the Board or the Mayor will willingly refrain from removing Gatewood from her office until after this Court has resolved the merits of Gatewood's constitutional claims.

## CLAIMS FOR RELIEF

## COUNT I

### Defendant Kling's Participation as a Member of the Board Violated Gatewood's Fourteenth Amendment Right to Due Process.
### (Against the Board, the Mayor, and Kling)

73. The Plaintiffs incorporate by reference the allegations made in each preceding paragraph as if each allegation was set forth herein.

74. The Fourteenth Amendment to the U.S. Constitution forbids any state or local government from depriving any person of life, liberty, or property without first affording that person due process of law.

75. The right to a fair hearing conducted by an impartial tribunal is the heart of due process of law. *Bakalis v. Golembeski*, 35 F.3d 318, 323 (7th Cir. 1994).

76. Indeed, a "fair trial in a fair tribunal" is the *minimum* that this constitutional guarantee requires. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*          Page 13 of 30
Case No. 4:__-cv-_____

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

77. The U.S. Supreme Court has emphasized that the requirement of neutrality on the part of judicial or quasi-judicial decisionmakers preserves *both the appearance and reality of fairness*, "generating the feeling, so important to a popular government, that justice has been done by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Marshall* at 242.

78. It is a "fundamental premise that principles of due process apply to administrative adjudications" and that "justice must satisfy the appearance of justice." *Antoniu v. S.E.C.*, 877 F.2d 721, 724 (8th Cir. 1989) (*citing In re Murchison*, 349 U.S. 133, 136 (1955) and *Offutt v. U.S.*, 348 U.S. 11, 14 (1954)).

79. The Due Process Clause does not permit administrative officials either to actually prejudge cases on which they will be called to rule or to give the appearance that a case has been prejudged. *Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583, 590 (D.C. Cir. 1970); *see also Staton v. Mayes*, 552 F.2d 908, 914-15 (10th Cir. 1977).

80. The right to due process is violated when an official's remarks demonstrate prejudgment or the appearance of prejudgment. *Zen Magnets, LLC v. Consumer Product Safety Comm'n*, 968 F.3d 1156, 1172 (10th Cir. 2020).

81. A party alleging unconstitutional bias on the part of a member of an administrative board acting in a quasi-judicial capacity may prove this claim by introducing extrajudicial statements by the adjudicator that are

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 14 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

inconsistent with the role of impartial decisionmaker. *Stivers v. Pierce*, 71 F.3d 732, 744 (9th Cir. 1995) (*citing Jenkins v. Sterlacci*, 849 F.2d 627, 634 (D.C. Cir. 1988)).

82. The test for disqualifying a decisionmaker is "whether a disinterested observer may conclude that (the agency) has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Cinderella Career & Finishing Schools, Inc.* at 591 (*citing Gilligan, Will & Co. v. S.E.C.*, 267 F.2d 461, 469 (2nd Cir. 1959).

83. The idea that the constitution prohibits a member of a quasi-judicial body who had prejudged certain factual or legal questions from participating in a hearing regarding the pre-judged issue was so plainly established by 1994 that the Seventh Circuit denied qualified immunity to four members of a local board, sued in their individual capacities, who had participated in a quasi-judicial hearing after making statements revealing their prejudice. *See Bakalis* at 326.

84. At the June 24, 2021 City Council meeting Kling made public statements demonstrating that he had already drawn conclusions regarding the merits of the proceeding against Councilmember Gatewood.

85. Kling expressed incredulity regarding the Lauder Report's conclusion that Gatewood had not violated any duty of candor that Gatewood owed to the City Council, saying, "Therefore we can be dishonest to each other? Therefore, there is no breach of duty? I think we should possess a higher code of ethics."

86. Kling then indicated that he considered his own views on honesty to be more

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 15 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

important than the law, saying, "*Sorry about the law. It's not always right.*"

87.  After describing his own opinion about what it means to "faithfully demean" oneself in office, Kling said, "This memorandum [the Lauber Report] concludes no breach, as far as faithfully demeaning... which I disagree with the attorney on."

88.  Kling also said, "Why did... the councilmember feel [she] needed to say she received the information from the police officers... *which she later admitted was a lie*? ...I think the need was to enhance the story in talking to the detectives down in Conroe. Give it more validity, get it more attention. *So I think there was a lie.*"

89.  After further discussion, Kling expressed his opinion that declining to pursue impeachment of Gatewood would constitute "sweeping the matter under the rug," adding "There's gotta be accountability. There's gotta be consequences for actions taken."

90.  When Kling testified on November 16, 2021, he admitted that at the time he made his statements at the June 24, 2021 City Council meeting, Kling believed that Gatewood had lied.

91.  Kling's public statements demonstrate that he extrajudicially considered evidence related to Gatewood's impeachment and that before the impeachment hearing began he had already drawn conclusions regarding the very issues the Board was supposed to be deciding.

92.  Although the City elicited testimony from Kling on November 16, 2021, to the

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 16 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

effect that he believed he had not formed any "unalterable" prejudgments of the matters before the Board and that he believed he could fairly judge the matter on the basis of evidence presented to the Board, both Missouri and federal courts have held that administrative decisionmakers cannot establish their own impartiality simply by testifying to that effect. *See Staton* at 913-14; *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 59 (Mo. Ct. App. 1990).

93. On the basis of Kling's public statements and Gatewood's March 25, 2021, accusation that Kling had committed a felony, a reasonable person unacquainted with Kling could doubt his impartiality in this matter or could believe that Kling's decision in this matter might be influenced by bias or prejudice against Gatewood.

94. A reasonable person unacquainted with Kling, but aware that Gatewood had publicly accused him of committing a felony, could also conclude that Kling was incapable of impartially judging a matter involving Gatewood.

95. Despite having previously and publicly stated his belief that Gatewood was guilty of lying, that dishonesty constituted a violation of her oath of office (no matter what the law might say), and that "There's gotta be accountability... [and] consequences for actions taken[,]" Kling sat as part of the Board throughout the impeachment hearing and will take part in the deliberations and vote that determines whether Gatewood is guilty of lying and of violating the City's ordinance, the two charges brought in the Articles of Impeachment.

96. Kling's mere participation on the Board as it oversaw Gatewood's impeachment

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____

Page 17 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

hearing violated her right to a fair hearing conducted by an impartial tribunal, which is guaranteed by the Due Process Clause of the Fourteenth Amendment.

97. As a consequence, the impeachment proceeding against Gatewood was unconstitutional from its outset and any result it might reach is invalid.

98. Gatewood made the City and Kling unmistakably aware that allowing Kling to remain as a member of the Board would violate her constitutional rights, would invalidate any result the Board might reach, and would result in Gatewood defending her constitutional rights in federal court.

99. Gatewood and all other O'Fallon taxpayers have suffered monetary damages in that the City, Hennessy, and Kling continued using taxpayer money to pursue the impeachment case against Gatewood even though they were aware that the result would be invalid.

100. Upon information and belief, as of January 23, 2022, the City has paid Lauber Municipal Law, LLC, at least $161,587.50 and has paid Emerald Court Reporting at least $2,416.60, all in association with the effort to impeach Gatewood.

## COUNT II

**Defendant Hinman's Participation as a Member of the Board Violated Gatewood's Fourteenth Amendment Right to Due Process.**
**(Against the City, the Mayor, and Hinman)**

101. The Plaintiffs incorporate by reference the allegations made in each preceding paragraph as if each allegation was set forth herein.

102. At the June 24, 2021 City Council meeting Hinman made public statements

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 18 of 30          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

demonstrating that he had already drawn conclusions regarding the merits of the proceeding against Councilmember Gatewood.

103. Hinman indicated his belief that Gatewood's efforts to gather information about Dupuis were unlawful.

104. Although Hinman acknowledged that all councilmembers "call sources and stuff for different things," he then insisted that he had never called a City employee's previous employer "to try to get information" and he asserted that "any elected official should know what their bounds are, and one of them is not to get involved in personnel issues. Everybody up here should know that."

105. Hinman further said that, "based upon the information, not just one occasion, several occasions, that [Gatewood] did that. And even after the first two phone calls and we had a discussion and said, 'You probably shouldn't be doing this,' a week or so later she calls again to a councilmember down there."

106. Hinman then confirmed that he had prejudged the merits of the issues before the Board, saying: "It's obvious to me that... the laws don't apply to Ms. Gatewood. *We have ordinances in here, the ordinances that were violated, the charter amendments that were violated by her.* And it was brought to us by the attorney that represents this council."

107. Hinman reemphasized his own bias and prejudgment of the merits of this matter later in the June 24, 2021 City Council Workshop, stating:

I just find it absolutely ridiculous that we can sit up here and say it's okay... with the actions that were given to us in this report, with what we know, the conversations we listened to on phone conversations, *the lies that were made that, in my opinion, she has broken ordinances of the*

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 19 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

*City of O'Fallon and our charter...* that it's okay just to say, "That's alright to do." I don't think that's okay for any of us. I don't think it is for us, for state legislators, for anybody. It's not okay to be that way. And for someone to sit up here and say, "It's okay that she broke the law. It's not that big of a law, though." *She broke an ordinance of the City of O'Fallon.*

108. When Hinman testified on November 16, 2021, he admitted that at the time he made his statements at the June 24, 2021 City Council meeting, he believed that Gatewood had violated the City's ordinances.

109. Although Gatewood asked Hinman whether he also thought Gatewood had lied at the time he made his statements at the June 24, 2021 City Council meeting, the Mayor sustained an objection that the question had been "asked and answered;" the transcript shows that question had not actually been asked or answered.

110. Hinman's public statements demonstrate that he extrajudicially considered evidence related to Gatewood's impeachment and that before the impeachment hearing began he had already drawn conclusions regarding the very issues the Board was supposed to be deciding.

111. Although the City elicited testimony from Hinman on November 16, 2021, to the effect that he believed he had not formed any "unalterable" prejudgments of the matters before the Board and that he believed he could fairly judge the matter on the basis of evidence presented to the Board, both Missouri and federal courts have held that administrative decisionmakers cannot establish their own impartiality simply by testifying to that effect. *See Staton* at 913-14; *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 59 (Mo. Ct. App. 1990).

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 20 of 30          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

112. On the basis of Hinman's public statements a reasonable person unacquainted with Hinman could doubt his impartiality in this matter or could believe that his decision in this matter might be influenced by bias or prejudice against Gatewood.

113. Despite having previously and publicly stated his belief that Gatewood was guilty of lying and of violating the City's ordinance, Hinman sat as part of the Board throughout the impeachment hearing and will take part in the deliberations and vote that determines whether Gatewood is guilty of lying and of violating the City's ordinance, the two charges brought in the Articles of Impeachment.

114. Hinman's mere participation on the Board as it oversaw Gatewood's impeachment hearing violated her right to a fair hearing conducted by an impartial tribunal, which is guaranteed by the Due Process Clause of the Fourteenth Amendment.

115. As a consequence, the impeachment proceeding against Gatewood was unconstitutional from its outset and any result it might reach is invalid.

116. Gatewood made the City and Hinman unmistakably aware that allowing Hinman to remain as a member of the Board would violate her constitutional rights, would invalidate any result the Board might reach, and would result in Gatewood defending her constitutional rights in federal court.

117. Gatewood and all other O'Fallon taxpayers have suffered monetary damages in that the City, Hennessy, and Hinman continued using taxpayer money to

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 21 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

pursue the impeachment case against Gatewood even though they were aware that the result would be invalid.

## COUNT III

**Defendant Keuhn's Participation as a Member of the Board Violated Gatewood's Fourteenth Amendment Right to Due Process.
(Against the City, the Mayor, and Keuhn)**

118. The Plaintiffs incorporate by reference the allegations made in each preceding paragraph as if each allegation was set forth herein.

119. At the June 24, 2021 City Council meeting Keuhn made public statements demonstrating that he had already drawn conclusions regarding the merits of the proceeding against Councilmember Gatewood.

120. Speaking of Gatewood, Keuhn said "Every time I think I've been too harsh, I find that apparently I haven't been harsh enough."

121. Keuhn later added "Quite frankly, someone who I considered to be a friend three months ago has turned out to be probably the worst councilperson I've ever worked with."

122. Regarding the January 14th Statement, Keuhn said, "Yes, no laws were broken, that's true, because it's not illegal to lie to this council, and that's why no laws were broken."

123. Keuhn later elaborated, saying:

> She told us that this all started when two police officers came up and... told her about the... misactions of the newly-elected police chief. She told us that before we voted on it. She told us that after we voted on it. ...So she has lied. She's lied to everyone out in the audience. She's lied to this council.

124. In his testimony on November 16, 2021, Keuhn confirmed that this statement

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 22 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

indicated his belief that Gatewood had lied in making the January 14th Statement.

125. Referring to the question of whether Gatewood's conduct had violated City ordinances, Keuhn said, "I'm not struggling to find that fine line of does it or does it not meet the letter of, you know, undercutting the administration or anything like that. I'm looking at actions that are unbecoming of a councilperson."

126. Keuhn added, "I think we need to send a clearer message that this kind of behavior is unacceptable; that if you want to run for office and serve as a city councilman, then you need to represent this city properly."

127. Regarding whether Gatewood's questions and statements about Dupuis had violated the City's ordinance against interfering with City employees, Keuhn said:

> [M]ost of [Dupuis's] tenure here was spent being harassed, maligned, libeled, and slandered by Councilwoman Gatewood and her husband. Both right here in this room and on Facebook, on a regular basis. Things said about him that, frankly, would trouble me if people said those about me, because they're not true about me either. ...I'm honestly surprised to sit here, after having witnessed months of slander, libel, Facebook posts undermining a chief of police as authority in a city he's new to and pretend that's not interference with his job.

128. Keuhn continued:

> Now, I'm sure most of you at home got a job that you consider somewhat stressful. Imagine trying to operate under those conditions. Tell me you wouldn't feel interfered with. A duly-elected city council votes 7-3 to put you in your job, but one of the three can't accept that, so they spend weeks, they spend months, calling people you used to work with, calling people who obviously have an axe to grind—in another state, writing a small blog—who they call anyone, tell 'em, "Hi,

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-____

Page 23 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

> I'm from the City of O'Fallon, and I'm calling about our current chief. And I'm just wondering what kind of a dirtbag he is." I'm wondering, would any of you consider that interference? Because I sure as hell know I would. ...*[T]hat's the biggest no-brainer in the history of no-brainers in my book.*

129. When asked to confirm that Kuehn had meant it was "the biggest no-brainer in the history of no-brainers" that Gatewood had violated the City's ordinance, Keuhn replied, "Yeah, based on the information I had at the time. Yes."

130. Keuhn also directly admitted at the June 24, 2021 City Council meeting that he had formed opinions about the outcome of the case, stating, *"I have my opinions right now. Absolutely. I think they're pretty clear.* That's based on the evidence that I have seen, which I believe is a large portion of it."

131. He later added, "I will tell you when it comes time to... for the hearing, I will be as fair and impartial as I possibly can. Y'know, it is what it is. *I've already got some of the facts, so yes, I've already got a preliminary opinion."*

132. Keuhn's public statements demonstrate that he extrajudicially considered evidence related to Gatewood's impeachment and that before the impeachment hearing began he had already drawn conclusions regarding the very issues the Board was supposed to be deciding.

133. Although the City elicited testimony from Keuhn on November 16, 2021, to the effect that he believed he had not formed any "unalterable" prejudgments of the matters before the Board and that he believed he could fairly judge the matter on the basis of evidence presented to the Board, both Missouri and federal courts have held that administrative decisionmakers cannot establish their own impartiality simply by testifying to that effect. *See Staton* at 913-14;

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____

Page 24 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

*Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 59 (Mo. Ct. App. 1990).

134. On the basis of Keuhn's public statements a reasonable person unacquainted with Keuhn could doubt his impartiality in this matter or could believe that his decision in this matter might be influenced by bias or prejudice against Gatewood.

135. Despite having previously and publicly stated his belief that Gatewood was guilty of lying and of violating the City's ordinance, Keuhn sat as part of the Board throughout the impeachment hearing and will take part in the deliberations and vote that determines whether Gatewood is guilty of lying and of violating the City's ordinance, the two charges brought in the Articles of Impeachment.

136. Keuhn's mere participation on the Board as it oversaw Gatewood's impeachment hearing violated her right to a fair hearing conducted by an impartial tribunal, which is guaranteed by the Due Process Clause of the Fourteenth Amendment.

137. As a consequence, the impeachment proceeding against Gatewood was unconstitutional from its outset and any result it might reach is invalid.

138. Gatewood made the City, the Mayor, and Keuhn unmistakably aware that allowing Keuhn to remain as a member of the Board would violate her constitutional rights, would invalidate any result the Board might reach, and would result in Gatewood defending her constitutional rights in federal court.

139. Gatewood and all other O'Fallon taxpayers have suffered monetary damages in

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____

Page 25 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

that the City, Hennessy, and Keuhn continued using taxpayer money to pursue the impeachment case against Gatewood even though they were aware that the result would be invalid.

## COUNT IV

**Removing Gatewood from Her Elected Office for Gathering Information About a Public Official Violates the First and Fourteenth Amendments. (Against the City and the Board)**

140. The Plaintiffs incorporate by reference the allegations made in each preceding paragraph as if each allegation was set forth herein.

141. The First Amendment, as applicable to state and local governments through the Fourteenth Amendment, guarantees citizens the freedom to express themselves in regard to matters of political and public importance.

142. "It is firmly established that the First Amendment's aegis... encompasses a range of conduct related to the gathering and dissemination of information." *Glik v. Cunnife*, 655 F.3d 78, 82 (1st Cir. 2011).

143. Federal courts have recognized that the First Amendment includes not only a right to receive information and ideas, but also an "undoubted right" to gather news from any source, so long as the means used to do so are themselves legal. *Turner v. Lieutenant Driver*, 848 F. 3d 678, 688 (5th Cir. 2017).

144. Gathering information about government officials—especially law enforcement officials—serves "a cardinal First Amendment interest" in protecting and promoting free public discussion of governmental affairs; it not only aids in the uncovering of abuses, but may also lead to a better-functioning government.

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 26 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

*Glik* at 82-83.

145. Gatewood enjoys the same First Amendment right to gather and share information about the City's Chief of Police as any other private citizen. *Bond v. Floyd*, 385 U.S. 116 (1966).

146. Indeed, the role that elected officials play in our society makes it all the more imperative that they be allowed freely to exercise their First Amendment rights regarding matters of current public importance. *Republican Party of Minnesota v. White*, 536 U.S. 765, 781-82 (2002).

147. City councils are not permitted to retaliate against a member of the council because of such member's exercise of First Amendment rights. *O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1118 (8th Cir. 1989).

148. To the extent that the City and the Board might contend that it may punish Gatewood if the January 14th Statement is found to have been false, "[t]he mere fact that a statement may be false does not remove it from the First Amendment's protections. *281 Care Committee v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014).

149. The City and the Board willfully acted under the color of law to punish Gatewood by subjecting her to impeachment and removal from her elected office simply for engaging in expressive activities protected by the First Amendment, as made applicable to state and local governments via the Fourteenth Amendment.

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____

Page 27 of 30

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

## PRAYER FOR RELIEF

WHEREFORE, Gatewood asks the Court to enter an order:

(a) Declaring that the City, the Mayor, in his official capacity, and Kling, Hinman, and Kuehn, in their individual capacities, violated the Fourteenth Amendment by denying Gatewood a fair trial by an impartial tribunal;

(b) Declaring that the City and the Board violated the First Amendment by subjecting Gatewood to an impeachment proceeding and potential removal from office simply because she had exercised freedoms within the scope of the First Amendment's protections;

(c) Enjoining the Board and the Mayor from taking any further action to remove Gatewood from office as a consequence of the allegations contained in the Articles of Impeachment, including an injunction that would prevent the Mayor from appointing any person to succeed Gatewood in office;

(d) Assessing the amount of taxpayer money the City expended in pursuing its unconstitutional action against Gatewood, including but not limited to the amount of money paid to Lauber Municipal Law, LLC;

(e) Assessing the amount of attorney fees and costs Gatewood has incurred to defend herself against the City's effort to impeach her;

(f) Granting Plaintiff's attorney fees and costs associated with this litigation, pursuant to 42 U.S.C § 1988;

(g) Ordering Kling, Hinman, and Keuhn, each in his individual capacity, to pay to the City a proportional percentage of the taxpayer money the City

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____                    Page 28 of 30                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

expended in pursuing its unconstitutional action against Gatewood and to pay a proportional percentage of the Plaintiff's attorney fees and costs Gatewood accrued in both defending against the City's effort to impeach her and this litigation to vindicate her constitutional rights; and

(h) Granting any other relief the Court may deem just and equitable.

Dated this 24th day of January, 2022.          Respectfully submitted,

DAVID E. ROLAND, #60548MO
FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
Phone:    (573) 567-0307
Email:    dave@mofreedom.org

*Counsel for Gatewood*

Complaint for Declaratory and Injunctive Relief
*Gatewood, et al. v. City of O'Fallon, et al.*
Case No. 4:__-cv-_____          Page 29 of 30          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

## VERIFICATION

STATE OF MISSOURI          )
                           )
COUNTY OF ST. CHARLES      )


I, Katie Gatewood, being duly sworn, state under oath that I have read the foregoing VERIFIED COMPLAINT and that, to the best of my knowledge, information, and belief, the statements therein are true and correct.

By: _____

Katie Gatewood

Sworn to and subscribed to me this 24 th day of January, 2022.

_____

NOTARY PUBLIC

My Commission Expires: 11-11-2023

```
ROBERT SIMMONS
Notary Public, Notary Seal
State of Missouri
St. Charles County
Commission # 13543721
My Commission Expires 11-11-2023
```

Complaint for Declaratory and Injunctive Relief
Gatewood, et al. v. City of O'Fallon, et al.
Case No. 4:__-cv-_____          Page 30 of 30          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307