**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KATIE GATEWOOD,           )<br>                                         )<br>          Plaintiff,         )<br>                                         )<br>     v.                              )<br>                                         )<br>CITY OF O'FALLON, MISSOURI, ET AL.,   )<br>                                         )<br>          Defendants.     )  | Case No. 4:22-CV-00089 |

**DEFENDANTS' JOINT SUGGESTIONS IN OPPOSITION TO
THE PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**

### I.    INTRODUCTION

Under well-settled principles of federal law, this case should be dismissed under the *Younger* doctrine or stayed under the *Colorado River* and *Landis* doctrines. Long- established principle and precedents demonstrate that Plaintiff's request for temporary injunctive relief cannot prevail. *After* the close of all evidence at her City of O'Fallon impeachment trial but *before* the jury has returned a verdict, Plaintiff is asking this Court to step in and decide the outcome of this ongoing *local* adjudicatory process, which involves only *local* elected officials and relates only to acts and proceedings of a *local* municipality in Missouri applying *local* and *state* impeachment law embodying significant state interests. To date, the O'Fallon Board of Impeachment *has not even returned a verdict* – and it is premature to know whether it will convict–meaning Plaintiff is seeking hypothetical relief against a possible future harm. As such, there is no jurisdictional case or controversy here, and the matter is not ripe for adjudication. Regardless, even if the jury later returns an impeachment conviction, the courts of the State of Missouri are equipped, ready, willing, and able to hear any potential state and federal issues this Plaintiff might choose to appeal.

There is no reason for the federal courts to become involved in this local pending trial–especially before it even happens. Federal law strongly counsels this Court to abstain, dismiss, and/or stay this case.

Despite Articles of Impeachment being filed against her *on July 22, 2021* (Plfs TRO Exh. 7) and despite her full participation in a public and procedurally-unchallenged trial on the merits under the Missouri Administrative Procedures Act *in September and November 2021* (Verified Complaint at ¶¶ 57, 63, 65), it is only on the eve of a verdict that Plaintiff filed this separate but parallel federal action and requested immediate injunctive relief. As a result–and even without considering the overwhelming factual evidence presented against Plaintiff at the impeachment trial, which she ignores in the Verified Complaint, Plaintiff cannot show that this is an emergency or that she is likely to prevail on the merits of this lawsuit, making emergency injunctive relief wholly improper.

## II.   LEGAL STANDARD

To obtain a temporary restraining order, the movant must establish that extraordinary relief is appropriate. *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1039-1040 (8th Cir. 2016); *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). The "*Dataphase* factors" must be weighed to decide whether a temporary restraining order or preliminary injunction is appropriate. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). The factors are: (1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction, (3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) the public interest. *Id*. at 114; *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000); FRCP 65(b)(1). No single *Dataphase* factor in itself is dispositive; in each case

all of the factors must be considered to determine whether on balance they weigh towards granting the injunction. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (citing *Dataphase*)). The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). Plaintiff, the party moving for extraordinary, injunctive relief bears the burden of establishing her right to such remedy. *See Anheuser-Busch, Inc. v. City Merchandise*, 176 F. Supp. 2d 951, 955 (E.D. Mo. 2001).

### III.   DISCUSSION

#### A.   Plaintiff Is Unlikely To Prevail On The Merits Because The Case Is Not Ripe.

At the time of the filing of the Verified Complaint in this action, and still today, the O'Fallon Board of Impeachment has not rendered a verdict in Plaintiff's impeachment proceedings. The case has been tried and the parties made their closing statements–but the verdict has not been returned. Even assuming a verdict of conviction might *later* support a claim for relief in federal court–and it would not–certainly no such claim exists today. The matters before this Court are not ripe for adjudication and there is no actual case or controversy for the Court to decide.

Article III courts are barred by the *case or controversy* requirement from deciding "abstract, hypothetical or contingent questions...." *Alabama State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters and Joiners of America v. McAdory*, 325 U.S. 450, 461 (1945). Further, the jurisprudential component of ripeness ensures that a court does not prematurely address an issue that may become more concrete and focused at a subsequent time. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985)).

### B. Plaintiff Is Unlikely To Prevail On The Merits Under The *Younger* Abstention Doctrine.

Under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts should abstain from exercising jurisdiction in cases where "equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism." *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). *Younger* abstention applies where "(1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise federal questions presented." *Cedar Rapids Cellular Tel., L.P. v Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (citation omitted). "[I]f all three questions are answered affirmatively, a federal court should abstain unless it detects 'bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate.'" *Night Clubs, Inc v. City of Fort Smith, Ark.*, 163 F.3d 475, 479 (8th Cir. 1998) (quoting *Middlesex County Ethics, Comm., v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).

**(1)  Ongoing State Judicial Proceedings.**

Impeachment proceedings are judicial and adjudicatory in nature. *Brown v. Griesenauer*, 970 F.2d 431, 437 (8th Cir. 1992) (impeachment is essentially judicial). "In other words, the board of aldermen, sitting as a board of impeachment, functioned like judges in that they were required to determine whether bias existed, to hear testimony and receive evidence, to evaluate the credibility of witnesses and weigh the evidence, and to make findings of fact and conclusions of law." *Id.* This is consistent with the "judicial" function of government:

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end.

*Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 479 (8th Cir. 1998) (quoting *Prentis v.*

*Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S. Ct. 67 (1908) (Holmes, J.)). Plaintiff concedes in her Verified Complaint that this is exactly the case here:

> Defendant O'Fallon Board of Impeachment (the "Board") is a quasi-judicial tribunal convened for the purpose of conducting an impeachment hearing pursuant to the terms of Missouri's Administrative Procedure Act at which the Board would consider certain allegations leveled against Plaintiff Gatewood and, if those allegations were determined to be true, to decide whether Gatewood should be removed from the office to which her constituents elected her.

(Verified Complaint at ¶ 12.) As such, the policies underlying *Younger* fully apply to these types of noncriminal judicial proceedings when, as here, important state interests are involved. *See e.g., Moore v. Sims*, 442 U.S. 415, 423 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–605 (1975).[1]

### (2)  Implicating Important State Interests.

Impeachment proceedings are important to public policy and part of a vital state interest in Missouri and O'Fallon. This public interest is so strong that federal court precedent has long-since recognized the critical need for "absolute immunity" for officials called upon to adjudicate impeachment cases to ensure there are no undue limitations of the work in their impeachment process:

> ***[T]here is a strong need to assure that the individual board members perform their impeachment function without harassment or intimidation***. Impeachment proceedings by their very nature are likely to be extremely controversial and fiercely political; ***it is in the public interest*** that individual board members feel free to exercise their judgment in impeachment proceedings without fear of burdensome litigation and potentially ruinous personal liability for damages.

---

[1] In addition to being judicial in nature, *Younger* requires that the state proceeding be ongoing at the time the district court enters its order regarding abstention. *See Wiener v. County of San Diego,* 23 F.3d 263, 266 (9th Cir. 1994) (in considering whether a state proceeding is ongoing, federal court should look at "the status of the state court proceeding at the time of the district court's decision rather than on its *current* status on appeal"). At the time this lawsuit was filed, and today, the impeachment proceedings against Plaintiff remain pending.

*Brown v. Griesenauer*, 970 F.2d 431, 438 (8th Cir. 1992) (emphasis supplied).  The *Brown v Griesenauer* court clearly recognized the important need to prevent juror intimidation. This important opinion establishes absolutely that the councilmembers in their individual capacity are *immune from ANY liability* for acting as jurors.  Plaintiff's inclusion of these individual councilmembers (jurors) as defendants in this case at this time is a manifestation of the evil that the Griesenauer case described (attempted juror intimidation) and sought to avoid.  Impeachment powers are deeply ingrained into the American ethos at the local, state, and federal level in order to serve as a check on the inappropriate conduct of governmental officials.  *See* Raoul Berger, *Impeachment: The Constitutional Problems* 1-6 (1973).

### (3) Adequate Opportunity To Raise Federal Questions.

"Where vital state interests are involved, as here, a federal court should abstain ***unless state law clearly bars* the interposition of the constitutional claims**."  *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (emphasis supplied) (internal quotations omitted).  The burden rests on Plaintiff to show that the ongoing state proceedings do not afford an adequate opportunity to raise constitutional claims, and a court "may not engage any presumption that the state courts will not safeguard federal constitutional rights."  *Neal v. Wilson*, 112 F.3d 351, 357 (8th Cir. 1997) (internal quotations omitted).  In other words, Plaintiff's ability to overcome *Younger* is entirely dependent on her ability to prove to this Court that she cannot raise her federal constitutional claims in the state proceeding.  For an issue of such singular importance, Plaintiff would presumably have presented her best argument and citations to show that her constitutional claims are "clearly barred."

Instead, however, Plaintiff simply *asserts* in conclusory fashion–*and without citing any authority at all*–that "the Board has no authority to consider or rule on these constitutional

questions." (TRO Brief at 19.) This conclusory statement is insufficient to meet Plaintiff's high burden. And it is not true. *As Plaintiff admits,* the on-going O'Fallon impeachment hearing itself is a "quasi-judicial tribunal…pursuant to the terms of Missouri's Administrative Procedure Act." (Verified Complaint at ¶ 12.) As such, Plaintiff's constitutional rights are fully ascertainable and protectable in these proceedings. They can be litigated at trial and–if lost–appealed in Missouri state court:

> Our review of the impeachment proceedings in this case is governed by Chapter 536 of the Revised Statutes of Missouri, the Missouri Administrative Procedure Act. *State ex rel Powell v. Wallace*, 718 S.W.2d 545, 547 (Mo.App.1986). ***This review includes a determination of whether the Board's action "is in violation of constitutional provisions.***" RSMo 536.140.2(1) (1978).

*State ex rel. Brown v. City of O'Fallon*, 728 S.W.2d 595, 596 (Mo.App. E.D. 1987) (emphasis supplied). Further, the July 22, 2021 "Resolution Concerning The Removal Of Katie Greenwood" specifically empowered the Mayor, as presiding officer at the impeachment, to "make *all* rulings on procedural, evidentiary, *or other matters* brought to his attention." (Plfs TRO Exh. 6, Section 5) (emphasis supplied). Plaintiff further admits that she, in fact, did raise these same constitutional questions in the impeachment hearing. (Plf TRO Brief at 19.) Nothing in Missouri law "clearly bars" Plaintiff from making every constitutional argument she might have both at her impeachment trial and in any state appeal arising therefrom.

This Court should abstain and dismiss this case under the *Younger* doctrine.

    **C.**    **Plaintiff Is Unlikely To Prevail On The Merits Under The *Colorado River* Abstention Doctrine.**

Beyond *Younger,* Plaintiff's claims should also be stayed under the *Colorado River* doctrine that lays out factors that that must be examined for the doctrine to apply. *Colo. River*

*Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Plaintiff's Verified Complaint is simply a *wholesale* re-telling of the facts she presented and law she argued in the impeachment hearing. (Verified Complaint at ¶¶ 18-72.) Same script; different audience. To be clear, Plaintiff expressly concedes that she "asserted her constitutional rights against the Board in the course of the impeachment proceedings." (Plfs TRO at 19.) As such, the pleaded issues here are parallel to the issues already in trial (but awaiting a verdict) in the O'Fallon impeachment proceedings. Allowing this action to proceed will reward Plaintiff's tactical decision to file a parallel case when all of these claims could be resolved through the first-filed and pending impeachment action.[2] The *Colorado River* doctrine promotes "wise judicial administration" to "conserve judicial resources or prevent duplicative litigation." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). Staying this federal action would achieve that purpose while also eliminating burdensome and unnecessary discovery and the risk of inconsistent rulings in a substantially similar state case. After balancing the relevant *Colorado River* factors in a "pragmatic, flexible manner with a view to the realities of the case at hand," *id.*, if this Court does not dismiss, it should grant a stay.

The "threshold question under *Colorado River*" is whether the federal action is "substantially similar" to the state action. *Fru–Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 544 (8th Cir. 2009); *Morrissey v. City of Los Angeles*, 2020 WL 5983923, at *4 (C.D. Cal. Aug. 12, 2020). "[E]xact parallelism" between the two actions "is not required. It is enough if the two proceedings are 'substantially similar.'" *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.

---

[2] The first and second *Colorado River* factors are irrelevant here, because neither the state nor federal cases are in rem proceedings and because both the state and federal forums—both in the St. Louis area—are convenient to the parties.

1989). This involves consideration of whether the "two actions clearly center on common facts and legal questions." *Morrissey*, 2020 WL 5983923, at *4. Courts "require a parallel suit to ensure 'comprehensive disposition of litigation,'" and thus examining whether there is substantial similarity addresses the "final factor" of the *Colorado River* balancing test. *R.R. Street & Co. Inc. v. Transport Ins. Co,* 656 F.3d 966, 982 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817). In the Eighth Circuit, the Court must further determine whether "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.*

In this case, Plaintiff asks this Court to decide the exact issues raised by her same defenses pending in the local impeachment proceedings. *Plaintiff admits* the on-going O'Fallon impeachment hearing is run "pursuant to the terms of Missouri's Administrative Procedure Act," (Verified Complaint at ¶ 12), where as a matter of law these same constitutional violations can be addressed at trial and on appeal. *State ex rel. Brown v. City of O'Fallon*, 728 S.W.2d 595, 596 (Mo.App. E.D. 1987). And *Plaintiff further admits* that she, in fact, did raise these same constitutional questions in the impeachment hearing. (Plf TRO Brief at 19.) In fact, Plaintiff is effectively asking this Court to substitute its judgment for that of the Board of Impeachment's (and the judgment of Missouri state court judges who would hear any appeals under the APA) on the exact same law, facts, and legal claims. It does not matter whether Plaintiff is seeking damages in the state action. As in *Morrissey* where the plaintiffs sought "damages under Section 1983" in the federal action but not in the state action, that "distinction is largely immaterial for *Colorado River* purposes" in light of the core factual similarities between the two actions. 2020 WL 5983923, at *4.

### 1. A Stay Is Necessary To Avoid Piecemeal Litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Intern. Underwriters Inc. v. Continental Ins. Co.,* 843 F.2d 1253, 1258 (9th Cir. 1988); *see also Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*, 554 F. Supp. 277, 281 (C.D. Cal. 1983) ("Exercising federal jurisdiction in this case would not only require duplication of time and effort on the part of the litigants and the Court, but would also create the possibility of inconsistent results."). Litigating "two separate actions in two different courts" to achieve a "singular goal" does not "promote 'conservation of resources and comprehensive disposition of litigation.'" *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1167 (9th Cir. 2017) (district court abused discretion in not granting stay).

"This action and the State Court Action are virtually identical and proceeding simultaneously would require two courts to resolve the same core legal issue," *Morrissey*, 2020 WL 5983923 at *5—here, whether Defendants have properly followed impeachment law and whether those laws are fair. *See also Aetna Inc. v. Whatley Kallas, LLP,* 2019 WL 4137614, *3 (C.D. Cal. July 9, 2019) (granting stay after finding that "if this action is not stayed, this Court would have to decide several substantive issue[s] that have already have been or will be decided by the state court."); *Corbin v. United L. Group*, 2010 WL 11601588, at *4 (C.D. Cal. Mar. 5, 2010) ("The Court does find that this factor weighs strongly in favor of abstention," noting that "the probability of duplicative discovery and rulings in the future is highly likely if both cases continue"). So here, a stay is warranted to avoid piecemeal litigation and its accompanying risks.

### 2. The Impeachment Hearing Was Filed First And Will Be Resolved Expeditiously.

"The [next] factor to contemplate when determining whether to abstain is the order in which jurisdiction was obtained and exercised." *Am. Intern. Underwriters*, 843 F.2d at 1258. In evaluating this factor, "priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions." *Id.* But, if the subsequently filed federal action is "repetitive," "the fact that state court jurisdiction was invoked first weighs heavily towards justifying a stay or dismissal of the parallel federal action." *Ryder Truck Rental*, 554 F. Supp. at 280–81 & n.7; *see also Corbin*, 2010 WL 11601588 at *5; *Darsie v. Avia Group Int'l, Inc.*, 36 F.3d 743, 745–46 (8th Cir. 1994) (noting that state proceeding was filed first and progressed further as a factor in staying the federal case.)

Defendants filed and pursued the state impeachment proceedings first. While this federal case is in its early stages, the impeachment action has already proceeded through trial and is simply awaiting a verdict. Plaintiff fully participated in that trial every step of the way for months. It will be resolved expeditiously–and the Missouri appeal procedures under the Administrative Procedures Act are both prompt and fair. Despite Articles of Impeachment arising against her on July 22, 2021 (Plfs TRO Exh. 7) and despite her participation in a state Administrative Procedures Act full trial on the merits in September and November 2021 (Verified Complaint at ¶¶ 63 and 65)– *both many months ago*–it is only today, on the eve of a verdict, that Plaintiff filed this parallel action and requested immediate injunctive relief. Plaintiff chose to stay in state proceedings until now. Under the *Colorado River* doctrine, however, "[h]aving elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum." *Ryder Truck Rental*, 554 F. Supp. at 280.

### 3. Presence Of State-law Issues Supports A Stay.

The next factor is "whether federal law or state law provides the rule of decision on the merits." *R.R. St.*, 656 F.3d at 978; *see also Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (identifying "misrepresentation, breach of fiduciary duty, and breach of contract" as other "routine issues of state law"); *Liberty Mut. Ins. Co. v. Wright Constr. Services, Inc.*, 4:18 CV 203 CDP, 2018 WL 4095186, at *5 (E.D. Mo. Aug. 28, 2018). The primary issues in both this federal case and the impeachment hearing involve the interpretation, application, and alleged unfairness of the City of O'Fallon's impeachment rules under Section 3.6(C) of its City Charter and the Missouri state laws that govern municipal business. For all practical purposes, Plaintiff has simply dumped her trial record into this Court in the form of her Verified Complaint. In essence, Plaintiff is asking this Court to step in and decide the outcome of this *local* political question, which involves only *local* elected officials and relates only to acts and proceedings of a *local* municipality in Missouri. The City's Charter and Ordinances, the Missouri Constitution and statutes relating to the powers of municipalities, and the Missouri Administrative Procedures Act are all that is at issue in impeachment. Here, impeachment is a creature of the Missouri Constitution, state law, and the O'Fallon Charter and Ordinances. While these state issues are at the center of the impeachment, fully satisfying this *Colorado River* factor, Plaintiff's federal constitutional defenses, of course, also can be, and have been, adjudicated in the impeachment hearing and any potential appeal as well. *See supra* Section II.B(3).

### 4. The State Proceedings Will Adequately Protect Plaintiff's Rights.

Under this factor, a court considers whether the state proceeding can adequately protect the rights of the federal litigants. *Liberty Mut. Ins. Co. v. Wright Constr. Services, Inc.*, 4:18 CV

203 CDP, 2018 WL 4095186, at *5 (E.D. Mo. Aug. 28, 2018); *R.R. St.*, 656 F.3d at 981. "Like source of law, however, this factor 'is more important when it weighs in favor of federal jurisdiction.'" *Id.* Indeed, "[t]his factor is most often employed, and is most important, where there are ***exclusively federal claims*** that could not be brought as part of the state-court action." *P6 LA MF Holdings SPE, LLC v. Shekhter*, 2017 WL 7411154, *15 (C.D. Cal. June 8, 2017) (emphasis supplied). Here, as in *Morrissey*, "Plaintiff[s] [have] not alleged any federal claims that have not been brought or could not have been brought in the State Court Action." *Morrissey*, 2020 WL 5983923 at *6. This factor, therefore, does not favor this Court proceeding with the federal action. The primary issues in this case involve the interpretation, application, and alleged unfairness of the City's of O'Fallon's impeachment rules under Section 3.6(C) of its City Charter and the Missouri state laws that govern municipal business.

    **5.**    **A Stay Is Necessary to Discourage Forum Shopping.**

"'[F]orum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules.'" *Morrissey*, 2020 WL 5983923, at *6 (quoting *Travelers Indem.*, 914 F.2d at 1371). This factor does not require a determination that forum shopping has actually occurred–although seeking a new forum on the eve of a verdict raises at least that implication here. Rather, it is sufficient if a court "finds that allowing a substantially similar federal action to proceed would likely *encourage* forum shopping." *Gintz v. Jack In The Box, Inc.*, 2006 WL 3422222, *7 (N.D. Cal. Nov. 28, 2006) (emphasis added); *see also, e.g.*, *Morrissey*, 2020 WL 5983923, at *6 (same).

### D. Plaintiff's Claims Should Be Stayed Under The *Landis* Doctrine.

Separate from the authority to dismiss under *Younger* or grant a stay under *Colorado River*, this Court retains broad discretion to grant a stay pursuant to its inherent authority under the *Landis* doctrine. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936); *Simmons v. GlaxoSmithKline, LLC*, 4:15CV1397 CDP, 2015 WL 6063926, at *1 (E.D. Mo. Oct. 14, 2015).

First and foremost, a stay of this action would promote the orderly course of justice, as "measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). As courts have held, "[t]he existence of another proceeding that may have a substantial impact on a pending case is a particularly compelling reason to grant a stay." *Larsen v. City of Los Angeles*, 2012 WL 12887557, at *9 (C.D. Cal. Aug. 3, 2012); *see also, e.g.*, *Liberty Mut. Ins. Europe, Ltd. V. Newman*, 2020 WL 7013998, at *4 (C.D. Cal. Oct. 21, 2020) ("Another proceeding that may have a substantial impact on the case may constitute a compelling reason to grant a stay."). In determining whether to grant a stay for this reason, "courts look for whether the underlying case would make determinations that would inform or 'contribute to the decision of[ ] the factual and legal issues before the district court.'" *RLI Ins. Co. v. ACE Am. Ins. Co.*, 2020 WL 1322955, at *7 (N.D. Cal. Mar. 20, 2020) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005)). "The parties and issues need not be identical to warrant a stay." *Bradshaw v. City of Los Angeles*, 2020 WL 2065007, *5 (C.D. Cal. Mar. 23, 2020).

As discussed above, the core issue here—whether the City has grounds to impeach Plaintiff and whether the process it is using to do so is constitutional—is raised by *both parties* in *both actions*. Under similar circumstances where a parallel state action raises identical or even similar issues, courts have exercised their inherent power to grant a stay. *E.g.*, *Icon at Panorama, LLC v. SW Regional Council of Carpenters*, 2020 WL 5751228, *3 (C.D. Cal. Mar. 12, 2020) (granting *Landis* stay because a "stay in this action will contribute to the orderly course of justice because *Noerr-Pennington* immunity—a central issue in this case—will be simplified by the outcome of the [state] CEQA appeal"); *Aetna*, 2019 WL 4137614, at *5 ("allowing Aetna to simultaneously proceed with identical lawsuits would 'waste judicial resources and be burdensome upon the parties'"); *L.A. Printex Industries, Inc. v. Did Fabric, Inc*, 2015 WL 12696174, at *2 (C.D. Cal. Nov. 17, 2015) (where "key issue in dispute is the same between the instant action and the State Court Action," court granted a stay because "[r]esolution of this issue will substantially impact, if not control the instant action"). In the absence of a dismissal of Plaintiff's claims, this Court should stay this action to promote the orderly course of justice.

A stay would not prejudice Plaintiff, but the absence of a stay would harm both the City and the public at large, especially if the state and federal actions result in conflicting rulings. Plaintiff admits that the state proceeding is subject to Missouri's comprehensive Administrative Procedures Act, (Verified Complaint at ¶ 12), including all of the constitutional protections she is seeking herein. *State ex rel. Brown v. City of O'Fallon*, 728 S.W.2d 595, 596 (Mo. App. E.D. 1987). While she is not seeking monetary damages in the impeachment hearing, "[a] delay in recovering potential monetary damages is not sufficient prejudice to warrant denial of a stay." *Larsen*, 2012 WL 12887557, at *9; *see also Aetna*, 2019 WL 4137614, at *5 (same). At bottom,

"the prejudice that could result from conflicting rulings and wasted resources without a stay outweighs any conceivable prejudice [Plaintiffs] may suffer due to a stay." *Bradshaw*, 2020 WL 2065007, at *8.  Defendants, however, would suffer significant hardships and inequity.  Most significantly, as described above, the City faces the risk of inconsistent rulings—a risk courts have considered to be sufficient hardship warranting a stay.  *E.g.*, *Klein v. Cook*, 2015 WL 2454056, at *4 (N.D. Cal. May 22, 2015) ("The potential prejudice to Defendants that could result from conflicting rulings outweighs any slight amount of potential prejudice Plaintiff may suffer from a temporary stay.")

## CONCLUSION

For the foregoing reasons and pursuant to the *Younger, Colorado River and Landis Doctrines*, Defendants respectfully request this Court abstain and dismiss Plaintiff's Complaint in its entirety.

Respectfully Submitted,

**LAUBER MUNICIPAL LAW, LLC**

*//s// Jeffrey W. Deane*

| Jeffrey W. Deane | Mo Bar #50698 |
| Catherine J. Gerstner | Mo Bar #73714 |

250 NE Tudor Road
Lees Summit, MO 64086
Phone: (816) 525-7881 x. 4
Jdeane@laubermunicipal.com
cgerstner@laubermunicipal.com

***ATTORNEYS FOR DEFENDANTS***

**ENGELMEYER & PEZZANI, LLC**

*//s// Timothy A. Engelmeyer*

Timothy A. Engelmeyer,    Mo Bar #39941
13321 North Outer forty Rd. #300
Phone: (636) 532-9933
tim@epfirm.com

***ATTORNEY FOR DEFENDANT MAYOR BILL HENNESSEY***

**CERTIFICATE OF SERVICE**

It is hereby certified that this document was electronically filed with the Court's this **27th** day of **January 2022** and also emailed to Plaintiff's Counsel.

*//s// Jeffrey W. Deane*
***Attorney for Defendants***

*//s// Timothy A. Engelmeyer*
***Attorney for Defendant Mayor Bill Hennessey***