UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATIE GATEWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:22-cv-00089-AGF |
| | ) |
| CITY OF O'FALLON, MISSOURI, et al., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's motion (ECF No. 24) to dismiss Plaintiff's First Amended Verified Complaint for Declaratory and Injunctive Relief pursuant to the Court's prior Order of Abstention (ECF No. 16) under *Younger v. Harris*, 401 U.S. 37 (1971), and on the grounds of res judicata, collateral estoppel, deference to state final judgments, and/or waiver.  Further, Defendants argue that any claims against those Defendants named in their individual capacities should be dismissed for the additional reason that they are entitled to absolute immunity.

Plaintiff failed to file a timely opposition to Defendants' motion, so on April 25, 2022, the Court ordered Plaintiff to show cause in writing why Defendants' motion should not be granted.  ECF No. 25.  Plaintiff has responded to the Order to Show Cause and argues that the Court should reconsider its Order of Abstention or, alternatively, dismiss this matter so that Plaintiff may appeal of the Order of Abstention.  As to the individual Defendants' immunity claims, Plaintiff acknowledges that Eighth Circuit precedent supports Defendants' arguments but contends that the precedent was wrongly decided.

For the reasons set forth below, the Court will grant Defendants' motion to dismiss.

## BACKGROUND

Plaintiff Katie Gatewood filed this action under 42 U.S.C. § 1983 and sought a temporary restraining order ("TRO") and preliminary injunction preventing the City of O'Fallon ("City"), Missouri from impeaching her and removing her from office as a member of the City Council. Plaintiff asserted constitutional claims against the City, the City's Board of Impeachment ("Board"), Mayor Bill Hennessy in his official capacity ("Mayor"), and City Council members Dale Kling, Dave Hinman, and Jeff Keuhn in their individual capacities.

On January 27, 2022, the Court issued a written Order of Abstention, holding that it was abstaining from deciding this case, including the motion for a TRO, under *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 16. In that Order, the Court noted that *Younger* abstention ordinarily requires dismissal of the federal court action but that when claims for damages are raised, a stay is usually preferable to dismissal, subject to certain exceptions. *See id.* at 14. Plaintiff's complaint, in addition to seeking injunctive and declaratory relief, sought certain forms of monetary relief. *Id.* at 14-15. Because the parties had not addressed the issue of how, if at all, the requests for monetary relief impacted the procedure that should be used by the Court in abstaining, the Court gave the parties until February 10, 2022, to brief these issues before the Court determined whether to dismiss or stay this case. *Id.* at 15.

On February 9, 2022, the day before her brief was due, Plaintiff filed an amended complaint, which she asserts was filed as of right under Fed. R. Civ. P. 15(a)(1)(a). *See*

ECF No. 17.  In her amended complaint, Plaintiff alleges that, on February 7, 2022, the Board in fact voted to impeach her and the Mayor removed her from office.  *Id.*  Plaintiff also amended her requests for relief to request that the Court: (a) declare that Defendants violated the Fourteenth Amendment by denying Plaintiff a fair trial; (b) declare that the City and the Board violated the First Amendment by subjecting Plaintiff to an impeachment proceeding and removing her from office; (c) order the Board and Mayor to restore Plaintiff to her office; (d) assess the amount of taxpayer money expended in pursuing the impeachment action; (e) assess attorney's fees and costs incurred in the impeachment action; (f) award monetary damages to compensate Plaintiff for losses she suffered as a consequence of her removal from office; (g) award attorney's fees and costs incurred in this litigation; and (h) order the individual Defendants to pay to the City a proportional percentage of the taxpayer money and attorney's fees and costs incurred in the impeachment action and this litigation.  *Id.* at 30-31.

On February 10, 2022, the parties filed their briefs with respect to whether a stay or dismissal was appropriate.  ECF Nos. 18 & 19.  Upon review of their briefs, the Court concluded that a stay rather than dismissal was appropriate in light of the monetary relief requested, and the Court stayed this action pending final resolution of the impeachment proceeding, including judicial review of that proceeding.  ECF No. 20.

Defendants thereafter advised the Court that Plaintiff failed to seek judicial review under the state's Administrative Procedure Act, that the time to do so had passed, and that the complaint should now be dismissed based on *Younger* or various preclusion doctrines.

*See* ECF No. 21. The Court thereafter lifted the stay and set a deadline for Defendants to answer or otherwise respond to Plaintiff's complaint. ECF No. 22.

Defendants then timely filed the instant motion to dismiss. As noted above, Defendants assert that dismissal is appropriate based on *Younger* or, alternatively, based on various preclusion theories because Plaintiff could have but failed to pursue judicial review of the impeachment decision; and that the individual Defendants are in any event entitled to absolute immunity.

Plaintiff requests that the Court either reconsider its Order of Abstention or dismiss this matter so that Plaintiff may appeal the abstention order. Plaintiff "expresses no opinion as to what theory the Court might rely upon to dismiss the action." ECF No. 26 at 3. Plaintiff also disputes that the individual defendants are entitled to immunity and indicates a desire to seek overruling of Eighth Circuit precedent on this issue.

## DISCUSSION

**Plaintiff's Request for Reconsideration**

As the Court explained in response to Plaintiff's prior request for reconsideration, the Court carefully considered the arguments raised by the parties in each round of briefing, and nothing in Plaintiff's more recent filings changes the Court's analysis that *Younger* abstention was appropriate. Plaintiff asserts that the Court should reconsider its decision to abstain under *Younger* because, in her amended complaint filed after the Court entered its Order of Abstention,[1] she alleges that the Mayor was in fact biased in that he prejudged the

---

[1] Plaintiff has not cited, and the Court has not found, any legal authority suggesting that Plaintiff could circumvent the Court's Order of Abstention by amending her federal complaint purportedly as a matter of right under the Federal Rules of Civil Procedure. Rather, the

issues before him, he was incapable of acting impartially due to Plaintiff's accusations against the Board, and he issued rulings that were contrary to federal law.

But the Court considered and rejected a bias-based exception to *Younger* in its Order of Abstention. The Court recognized that "bad faith, harassment, or some extraordinary circumstance [may] make abstention inappropriate.'" ECF No. 16 at 12 (quoting *Aaron v. Target Corp.*, 357 F.3d 768, 778 (8th Cir. 2004)). However, the Court noted that the Eighth Circuit has suggested that the bad faith exception may only apply in criminal cases and, in any event, must be construed very narrowly and invoked only in extraordinary circumstances. *Id.* at 12-13 (citing *Aaron*, 357 F.3d at 778; *Tony Alamo Christian Ministries*, 664 F.3d at 1254).

The Court further noted that Plaintiff had the chance to litigate the question of bias before an impartial adjudicator, the Mayor; Plaintiff had not argued at that time that the Mayor was biased; and Plaintiff had not shown or even suggested that the process by which the Mayor decided her motions for disqualification was unfair. *Id.* at 13. Indeed, Plaintiff was able to present a full record with respect to her motions to disqualify during the impeachment proceeding, including submitting legal briefing through counsel, examining witnesses, and presenting evidence. Thus, the operative complaint and record on which the Court decided to abstain under *Younger* did not reflect or even suggest the Mayor's bias.

Plaintiff's amended complaint—the validity of which is questionable at best, as it was filed after the Court abstained—does not impact the Court's conclusion. Even if the

---

applicable legal authorities suggest that issues related to abstention are determined at the time the federal complaint was first filed. *See, e.g.*, *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012).

*Younger* exception on which Plaintiff relies could apply in this non-criminal context, Plaintiff has not demonstrated the level of bias recognized by federal courts as rising to the level warranting intervention in state proceedings. *Cf. Yamaha Motor Corp., U.S.A. v. Riney,* 21 F.3d 793, 798 (8th Cir. 1994) (holding that a state tribunal was incompetent for the purpose of *Younger* abstention where there was "ample evidence of bias" on the part of a state motor vehicle commissioner, including a financial interest). Missouri's Administrative Procedure Act ("APA") provided an adequate forum to litigate Plaintiff's claim of bias. *See Brown v. City of O'Fallon*, 728 S.W.2d 595, 596 (Mo. Ct. App. 1987) (reviewing under the state's APA the impeachment of a city mayor and reversing impeachment on the ground that board members were biased). And as discussed below, Plaintiff's intentional failure to pursue relief in that forum precludes her from doing so now in this Court.

### *Younger* Abstention and Preclusion

"[T]he Supreme Court long ago held that parties may not avoid *Younger* by withholding defenses from the state proceeding and commencing the federal suit as soon as the state case ends." *Nelson v. Murphy*, 44 F.3d 497, 502 (7th Cir. 1995) (citing *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607–11 (1975)). "Federal post-trial intervention, in a fashion designed to annul the results of a state trial, . . . deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction." *Huffman*, 420 U.S. at 609; *see also Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1144 (8th Cir. 1990) (applying *Huffman* to an administrative action from which judicial review was not timely sought and holding that because "a necessary concomitant of *Younger* is that a party must exhaust his

state appellate remedies before seeking relief in the District Court, . . . a party cannot avoid *Younger* by choosing not to pursue available state appellate remedies").[2] Plaintiff seeks to do exactly what *Huffman* precluded—to annul the result of her impeachment proceeding without exhausting the available state remedies to do so. *See Huffman*, 420 U.S. at 610 ("[C]onsiderations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious.").

Plaintiff's failure to seek judicial review in the state courts also bars her constitutional claims under the preclusion doctrines. *See id.* at 607 n.19 (noting overlap between *Younger*'s restrictions after entry of a state trial court judgment and the res judicata implications of such a judgment). "Res judicata (claim preclusion) and collateral estoppel (issue preclusion) are fully applicable under § 1983." *Nelson*, 44 F.3d at 503; *see also Preiser v. Rodriguez*, 411 U.S. 475, 497 (1973).

These preclusion doctrines prevent a party from litigating claims and issues that have been previously adjudicated, including claims that have been adjudicated in administrative

---

[2] Although the ongoing state proceeding at the time of the abstention decision here was administrative rather than judicial, the Eighth Circuit and most other circuits to consider the issue have held that the distinction makes no difference in this context, where the administrative proceeding is quasi-judicial, or coercive in nature, in that it declares or enforces liabilities based on existing facts and law. *See Alleghany,* 896 F.2d at 1144; *accord Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 790–91 (3d Cir. 1994); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008); *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998). Only the Fifth and Sixth Circuits have held otherwise. *See Norfolk & Western Ry. v. Pub. Util. Comm'n of Ohio*, 926 F.2d 567, 572–73 (6th Cir.1991) (holding that *Younger* abstention does not apply if administrative proceedings have been completed and the agency's ruling has not been appealed); *Thomas v. Texas State Bd. of Med. Exam'rs*, 807 F.2d 453, 456 (5th Cir.1987) (same).

hearings, so long as the administrative hearing provided procedural protections akin to a judicial proceeding. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Johnson v. Vilsack*, 833 F.3d 948, 953 (8th Cir. 2016) (citation omitted).

"Whether the agency is acting in a judicial capacity, in turn, depends in part on the procedural protections it provides . . . ." *Id.* at 954. Although there is no "litmus test" for determining what procedural protections are required to give an administrative proceeding preclusive effect, courts have concluded that safeguards such as representation by counsel, the opportunity for discovery and witness examination, the opportunity to present memoranda of law, and the opportunity for judicial review are sufficient. *Cf. id.* at 956-58 (determining that the lack of any such protections in an agency proceeding rendered the proceeding too bare bones to warrant preclusion). Each of those safeguards was present in the impeachment proceeding here. *See* ECF No. 16 at 6-7 (describing proceedings); *see also Brown v. Griesenauer*, 970 F.2d 431, 437 (8th Cir. 1992) ("[I]mpeachment proceedings [in the City of O'Fallon, Missouri] are essentially judicial or adjudicatory in nature, even though the decision-making body and the form of the proceedings are legislative.").

As the Court noted in its prior Orders, Plaintiff in fact raised her constitutional claims in the impeachment proceeding, she failed to seek state-court judicial review of the adverse rulings on those claims, and she is precluded from relitigating those claims now.[3] *See*

---

[3] In a prior brief, Plaintiff indicated that, if she sought judicial review in the state court, "she would simply assert a reservation as authorized by the U.S. Supreme Court's decision in *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964), to preserve her right to have

- 8 -

*Nelson*, 44 F.3d at 503 ("Plaintiffs had, and did not use, a state forum in which they could have presented the arguments they now urge. Their deliberate bypass of the opportunity to litigate in state court forecloses them from litigating in federal court."); *see also Mueller v. Woodmen of the World Life Ins. Soc'y*, No. 12-0283-CV-ODS, 2012 WL 4957087, at *2 (W.D. Mo. Oct. 16, 2012) ("Missouri courts generally afford preclusive effect to administrative determinations to prevent parties from relitigating issues or claims resolved in administrative proceedings.") (citing *Bresnahan v. May Dep't Stores Co.,* 726 S.W.2d 327, 329–30 (Mo. 1987)).

Each of Plaintiff's claims, including her claims for damages, depend on finding a constitutional violation, and such a finding is foreclosed by the preclusion doctrines described above.  Therefore, each of Plaintiff's claims must be dismissed.

Moreover, as Plaintiff appears to concede, Eighth Circuit precedent makes clear that her claims for damages against the individual defendants separately fail under the doctrine

---

her constitutional claims resolved by this Court."  ECF No. 19 at 9.  In *England*, the Supreme Court held when a federal court has abstained under *Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941) and returned a case to state court, the litigant may explicitly reserve her federal claim for future litigation in federal court after the state court has resolved the state-law claims. *See England*, 375 U.S. at 421-22.  It is questionable whether an *England* reservation would apply here, where the Court abstained under *Younger* and not *Pullman*. Several circuits have held that it would not. *See, e.g.*, *Duty Free Shop, Inc. v. Administracion de Terrenos de Puerto Rico*, 889 F.2d 1181, 1183 (1st Cir. 1989) ("*England,* and its reservations, are not relevant here, in the *Younger* context, where the purpose of abstention is not clarification of state law, but reluctance to interfere with an ongoing state judicial proceeding."); *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 183 (2d Cir. 1991) (same); *Nivens v. Gilchrist*, 444 F.3d 237, 246 (4th Cir. 2006) (same); *but see Los Altos El Granada Invs. v. City of Capitola*, 583 F.3d 674, 690 (9th Cir. 2009) ("The mere fact that a district court abstains under *Younger* does not require us to ignore the *England* reservation . . . ."). Regardless, Plaintiff did not seek such a reservation, instead opting to forego judicial review in the state court entirely.  Under these circumstances, she is precluded from raising her constitutional claims in federal court.  *See Huffman*, 420 U.S. at 609.

of absolute immunity.  *See Brown*, 970 F.2d at 439 ("[W]e hold that defendants acted in a judicial capacity in voting to impeach the mayor and that their function as a board of impeachment was sufficiently comparable to 'classic' adjudication so as to justify absolute immunity from personal liability for damages.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED**. ECF No. 24.

A separate Order of Dismissal will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of June, 2022.